UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JEVON MYERS,                                    :        Filed: December 29, 2023

                Petitioner,           :        <u>**MEMORANDUM DECISION**</u>

           - v -                             :        20-cv-2679 (DC)

MICHAEL ROYCE, Superintendent of Green          :
Haven Correctional Facility,

                            :

              Respondent.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:        JEVON MYERS
                   *Petitioner Pro Se*
                   DIN 16A4581
                   Upstate Correctional Facility
                   P.O. Box 2001
                   309 Bare Hill Road
                   Malone, NY 12953

                   MELINDA KATZ, Esq.
                   District Attorney, Queens County
                   By:    Christopher J. Blira-Koessler, Esq.
                          Assistant District Attorney
                   125-01 Queens Boulevard
                   Kew Gardens, NY 11415
                       Attorney for Respondent

CHIN, Circuit Judge:

        On October 31, 2016, following a jury trial, petitioner Jevon Myers was

convicted in the Supreme Court of New York, Queens County (Buchter, *J.*), of first-

degree manslaughter, in violation of N.Y. Penal Law § 125.20(1), and third-degree

criminal possession of a weapon, in violation of N.Y. Penal Law § 265.02(1). Dkt. 7 at 5-6. The jury acquitted Myers of second-degree murder, a violation of N.Y. Penal Law § 125.25(1). Myers, a second felony offender, was sentenced to twenty-three years on the manslaughter count and an indeterminate, concurrent three and a half to seven-year sentence on the weapons count. The court also imposed a five-year term of post-release supervision. *Id.* at 6. His convictions were affirmed by the Appellate Division, Second Department, *People v. Myers*, 93 N.Y.S.3d 859 (2d Dep't 2019) ("*Myers I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Myers*, 126 N.E.3d 170 (2019) (Feinman, *J.*) ("*Myers II*").

On June 15, 2020, Myers filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in this Court. Dkt. 1. Myers claims that: (1) evidence of the victim's statements were improperly admitted as excited utterances, in violation of his constitutional right to confrontation; (2) his arrest was the product of an unduly suggestive photographic display; (3) the prosecution did not prove his guilt beyond a reasonable doubt; and (4) his sentence was unduly harsh and excessive. *Id.* at 3-4. The Queens County District Attorney's Office opposed the Petition on October 28, 2020. Dkt. 7.

On February 4, 2021, Myers filed a supplemental *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Supplemental Petition") and a motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10.

2

In the Supplemental Petition, Myers argues that (1) trial counsel was ineffective; (2) the prosecutor committed misconduct; and (3) he is actually innocent. Dkt. 12. The Queens County District Attorney's Office opposed the Supplemental Petition on February 23, 2022. Dkt. 20. On October 25, 2023, the case was reassigned to the undersigned.

For the reasons that follow, the Petition and Supplemental Petition are DENIED.

*STATEMENT OF THE CASE*

**I.    *The Facts[1]*

The evidence at trial established the following:

On July 23, 2014, around 5:20 p.m., four police officers received a radio call reporting an assault in which a person had been stabbed near Beach 22nd Street and Mott Avenue in the Far Rockaway neighborhood of Queens. Dkt. 8 at 181. Officers Jonathan Baruccheri and Joseph Giattino arrived on the scene first, where they observed a woman rendering aid to the victim, Royan Ennis. *Id.* Ennis, a dollar van driver, was lying on the ground, having trouble breathing, and asking for water. *Id.* at 180-81. Officer Giattino observed a puncture wound in Ennis's chest. *Id.* at 191. The officers asked Ennis who had stabbed him. *Id.* at 182. Ennis responded that "Jerry" stabbed him

---

[1]    The facts are primarily drawn from Respondent's affidavit submitted in opposition to the Petition. The recitation of facts in the affidavit is supported by cites to Respondent's brief to the Appellate Division, which contains detailed citations to the record. *See* Dkt. 7 at 5; Dkt. 8 at 179-201.

in the chest with a screwdriver. *Id.* Ennis described "Jerry" as a heavy-set black man with dreadlocks driving a gray dollar van. *Id.*

Officer Giattino accompanied Ennis in the ambulance to Jamaica Hospital while Officers Kathleen Kelly and Eric Doughty canvassed the surrounding area in search of a man matching Ennis's description. *Id.* at 182. Around 5:35 p.m., Officers Kelly and Doughty stopped Myers, who matched the description, as he was driving in the opposite direction in a gray livery van. *Id.* Officer Kelly questioned Myers, who acknowledged that he had gotten into an argument with someone on Mott Avenue, but then left. *Id.* at 183. Officer Doughty took a cell phone photograph of Myers. *Id.* Doughty's sergeant texted the photo to Officer Giattino. *Id.* at 184. In the ambulance, Officer Giattino passed the photo on his phone to the back seat, where Paramedic Pete Vacarro was treating Ennis. *Id.* As Officer Giattino testified (without objection), Vacarro told him that Ennis identified the person in the photo as "Jerry," and Ennis stated that Jerry "stabbed" him and that Jerry was also known as "Jevon." *Id.*

In the ambulance, Ennis said to Vacarro multiple times, "I'm going to die. I feel like I'm going to die." *Id.* at 194. Upon arriving at Jamaica Hospital, doctors discovered that the stabbing caused a liter of blood to empty into Ennis's chest cavity. *Id.* at 196. He died shortly after arriving at the hospital. *Id.* at 180.

There were several witnesses to the original altercation between Myers and Ennis. Around 5:12 p.m., less than ten minutes before the police received a call, Dr.

4

Sylvia Green and Debra Williams were riding in Williams's SUV on Mott Avenue

heading toward 20th Street. *Id.* at 188. The women saw Myers jump out of a van. *Id.*

Williams recognized Myers as a driver and recalled that she had ridden in his dollar

van before. *Id.* at 188-89. The women observed Myers "lunge open handed" at a smaller

man (Ennis), "striking him and knocking him to the ground." *Id.* at 189. As Ennis got

up and began running toward Redfern Avenue, the women witnessed Myers throw

"what appeared to be a stick or yellow object" at Ennis's back while chasing him. *Id.*

Around 5:20 p.m., Karen Arce, another witness, watched Ennis run from

Mott Avenue to the front of a fish market, where he collapsed. *Id.* at 190. Arce

"[r]ush[ed] to his aid" and noticed blood on Ennis's hands. *Id.* Ennis asked Arce to call

911, and when asked who stabbed him, he told Arce that it was "Jerry" with a

screwdriver. *Id.*

During his arrest processing at the precinct, Myers told Officer

Christopher Carlino, "Why am I here. I don't know why I'm here. I didn't stab no dude.

He broke my window. I want to press charges. There is cameras in the area. You can

see." *Id.* at 197. Later that night, around 9:00 p.m., Detective Baldwin Henry began

questioning Myers. *Id.* Detective Henry gave Myers his *Miranda* warnings after Myers

indicated that he would be willing to speak. *Id.* Myers told Detective Henry that

"[Ennis] . . . was a newcomer. He busted a U-ie on me." *Id.* By this, Myers meant that

Ennis had made a U-turn with his dollar van to get ahead of Myers in the queue to pick

5

up passengers.  *Id.*  Myers explained that he caught up to Ennis and told him that because of that U-turn, Ennis owed Myers ten dollars.  *Id.* at 197-98.  Ennis responded that he did not owe defendant "shit."  *Id.* at 198.  Myers admitted to Detective Henry that their confrontation "then got physical."  *Id.*  He stated that Ennis used a sledgehammer to break the back window of Myers's van.  *Id.*  Myers said that he then took the sledgehammer and chased Ennis with it, eventually throwing it at Ennis.  *Id.*  Myers acknowledged being familiar with Ennis, that he was known as both Jerry and Jevon, and that he wore his hair in dreadlocks.  *Id.* at 201.  But Myers denied ever touching Ennis.  *Id.* at 198.

**II.**       ***The State Court Proceedings***

        **a.**       ***The Indictment and Pre-Trial Proceedings***

        Myers was indicted in Queens County for second-degree murder, first-degree manslaughter, and third-degree criminal possession of a weapon.  Dkt. 7 at 5.  On July 24, 2015, before trial commenced, the trial court held a suppression hearing as to Myers's identification by Ennis and two other witnesses, and all of Myers's statements to law enforcement.  *Id.*  Myers also challenged the probable cause for his arrest.  *Id.*  The court denied the suppression motion except as to Myers's pre-*Miranda* statements.  *Id.*

### b.      The Trial

Trial began on September 14, 2016.  *Id.*  The jury heard testimony from

Karen Arce, Dkt. 8-3 at 231-51; Dkt. 8-4 at 1-10; Officer Doughty, Dkt. 8-4 at 15-45;

paramedic Pete Vacarro, Dkt. 8-4 at 52-81; Officer Cusick, Dkt. 8-4 at 84-95; Officer

Giattino, Dkt. 8-4 at 102-39; a Force Investigation Division detective Rashida Jupiter,

Dkt. 8-4 at 147-68; Officer Carlino, Dkt. 8-4 at 178-82; Officer Kelly, Dkt. 8-4 at 185-201;

Detective Henry, Dkt. 8-4 at 203-42; Dr. Sylvia Green, an eyewitness, Dkt. 8-5 at 4-30;

Ennis's mother Bernal Ennis Davis, Dkt. 8-5 at 31-37; Dr. Emil Silberman, the treating

physician at Jamaica Hospital, Dkt. 8-5 at 43-58; Myers (in the form of his grand jury

testimony), Dkt. 8-5 at 60-84; Debra Williams, an eyewitness, Dkt. 8-5 at 93-128; and

medical examiner Dr. Odette Hall.  Dkt. 8-5 at 146-183.  Myers did not testify or put on a

defense.  Dkt. 8-5 at 184, 192.

On September 28, 2016, the jury found Myers guilty of first-degree

manslaughter and third-degree criminal possession of a weapon.  Dkt. 8-6 at 79.  The

jury acquitted Myers on the second-degree murder charge.  *Id.* at 78-79.

### c.  The Sentencing Hearing

On October 31, 2016, the trial court sentenced Myers.  *Id.* at 84.  Ennis's

mother gave a statement at the sentencing.  *Id.* at 88-90.  The trial court also addressed a

predicate felony statement filed by the District Attorney's Office of Queens County,

alleging that Myers was a second felony offender based on a first-degree reckless

endangerment conviction in violation of Penal Law § 120.25 in 2010. *Id.* at 86. He was sentenced to one to three years incarceration for that crime. *Id.* The trial court asked Myers whether he was "the person in the statement" and Myers replied, "Yes." *Id.* When asked whether he wished to challenge the constitutionality of that conviction, Myers declined. *Id.* at 86-87.

After adjudicating Myers as a second felony offender, the trial court sentenced Myers to twenty-three years for the manslaughter charge and an indeterminate sentence of three and a half to seven years on the weapons charge, to run concurrently. The court also imposed a five-year period of post-release supervision. *Id.* at 87, 95-96.

### d. Direct Appeal

Myers appealed his convictions to the Appellate Division, Second Department, asserting the following claims: (1) Myers was denied his Sixth Amendment right to confrontation by the admission of Ennis's statements as excited utterances; (2) his arrest was the product of an unduly suggestive display not supported by probable cause; (3) the prosecution failed to prove his guilt beyond a reasonable doubt, and in the alternative, the verdict was against the weight of the evidence; and (4) his sentence was unduly harsh and excessive. Dkt. 8 at 23-65.

On March 13, 2019, the Appellate Division affirmed Myers's convictions. *See Myers I*, 93 N.Y.S.3d at 860. The Appellate Division held that (1) Myers failed to

8

preserve for appellate review his challenges to the testimony as to the statements made by Ennis; (2) in any event, Myers's right to confrontation was not violated because the witness's primary purpose in questioning the victim was to address an ongoing emergency, and Ennis's statements were not testimonial in nature; (3) Myers failed to preserve for appellate review his challenge to the legal sufficiency of the evidence supporting his convictions; (4) in any event, the evidence presented at trial, viewed in the light most favorable to the prosecution, was legally sufficient to establish the defendant's guilt beyond a reasonable doubt; and (5) the sentence imposed was not excessive. *Id.* The court dismissed Myers's remaining contentions as without merit. *Id.*

On May 30, 2019, the New York Court of Appeals (Feinman, *J.*) denied leave to appeal. *See Myers II*, 126 N.E.3d at 170.

### e.  *State Collateral Review*

On January 31, 2017, before perfecting his appeal, Myers moved *pro se* to vacate the judgment of conviction pursuant to New York State Criminal Procedure Law ("CPL") § 440. Dkt. 7 at 6; Dkt. 8 at 1-11. Myers claimed that (1) the trial court's jury instructions were improper; (2) the jury verdict acquitting him of murder was the equivalent of an acquittal on the manslaughter charges and the verdict was thus in violation of double jeopardy; (3) the prosecutor improperly referenced a later-recanted witness statement during his summation; (4) the indictment was defective; (5) there was insufficient evidence of his guilt; (6) trial counsel was ineffective by failing to inquire

into certain witness accounts; and (7) there was newly discovered evidence that would have changed the result at trial.  Dkt. 8 at 14.

On April 17, 2017, the Queens County Supreme Court (Buchter, *J.*), denied Myers's motion to vacate the judgment in all respects.  *Id.* at 20-22.  With respect to the ineffective assistance of counsel claim, the court found that without an affidavit, the claim was based on "unsubstantiated and conclusory allegations," and thus "fail[ed] to even warrant a hearing." *Id.* at 21.  The court found that the double jeopardy claim, the multiple counts claim, the prosecutor's summation claim, the charge to the jury claim, and the sufficiency of evidence claims were subject to a mandatory procedural bar because "they are on the record claims that can be raised on direct appeal" under CPL § 440.10(2)(b).  *Id.*  Finally, the court found that the purported newly discovered evidence could have been produced at trial with due diligence.  *Id.*

## III.    *The Petition*

In the Petition dated June 15, 2020, Myers seeks habeas relief on the grounds raised in his direct appeal as well as all the claims raised in his motion to vacate the judgment.  Dkt. 1.  Respondent filed its opposition on October 28, 2020.  Myers did not file a reply.  Dkt. 7.

## IV.    *The Supplemental Petition*

In an order dated November 23, 2020 denying Myers's motion to stay the Petition, this Court (Chen, *J.*) noted that it intended to review Myers's habeas claims,

10

"including both exhausted and unexhausted claims." Dkt. Order Dated 11/23/2020. The

Order continued: "[Myers] has not sufficiently articulated the three unexhausted claims

he describes in his letter, specifically his (1) ineffective assistance of counsel, (2) false

evidence, and (3) actual innocence claims." *Id.* The Court ordered Myers to file a

supplemental petition in support of those claims by January 22, 2021. *Id.*

On January 21, 2021, Myers supplemented his request for a stay with a

copy of a second motion to vacate his conviction under CPL § 440.10. Dkt. 20 at 6. On

August 19, 2021, Myers moved, for a second time, to vacate the judgment of conviction

under CPL § 440, contending that the evidence adduced at the pre-trial hearing did not

establish probable cause for his arrest, and that trial counsel was ineffective because he

conceded that there was probable cause to effectuate Myers's arrest. *Id.* Myers also

claimed that the trial court made a statement during *voir dire* that was

"counterproductive of the petitioner's presumption of innocence." *Id.* Myers's second

motion to vacate the judgment is apparently still pending before the Supreme Court,

Queens County. *Id.* at 7.

On February 4, 2021, Myers filed the Supplemental Petition. Dkt. 12.

Meanwhile, on April 15, 2021, Myers moved to stay the action so that he could "exhaust

certain claims" in state court. Dkt. 14.

On January 19, 2022, Respondent opposed the motion to stay. Dkt. 17. On

February 2, 2022, this Court (Gujarati, *J.*) denied Myers's motion to stay because Myers

had "not demonstrated good cause for his failure to exhaust."  Dkt. Order Dated

2/2/2022.

### DISCUSSION

**I.**    *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was

'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting

*Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per

curiam).

A federal court cannot review a habeas petition unless the petitioner "has

exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This

requirement allows state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007). A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (i) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal quotation marks and citation omitted), and (ii) the state procedural rule

13

is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

 The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (citations omitted).  Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review.  *See, e.g.*, *Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal).  If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. at 750.

 As for a petitioner's claims under the Fourth Amendment, "where the State has provided an opportunity for full and fair litigation of [the] claim, the Constitution does not require that a state prisoner be granted federal habeas relief on

the ground that evidence obtained in an unconstitutional search or seizure was

introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976).

## II.    *Analysis*

In his Petition, Myers contends that:  (1) he was denied his right to

confrontation when the trial court admitted Ennis's statements as excited utterances; (2)

his arrest was the product of an unduly suggestive display of a single photograph and

not supported by probable cause; (3) the prosecution failed to prove his guilt beyond a

reasonable doubt, and, in the alternative, the verdict was against the weight of the

evidence; and (4) the imposition of the sentence was unduly harsh and excessive.  Dkt.

1.

In his Supplemental Petition, Myers asserts claims of ineffective assistance

of counsel, prosecutorial misconduct, and actual innocence.  Dkt. 12-1.

I address the claims in turn, beginning with the claims in the original

Petition and then turning to the Supplemental Petition.

### A.    *The Confrontation Claim*

First, Myers argues that the trial court's admission of evidence of Ennis's

statements as excited utterances violated his Sixth Amendment right to confrontation.

Dkt. 1 at 3.  The Appellate Division considered Myers's claim on direct appeal and

concluded that CPL § 470.05(2) procedurally barred his excited utterance claim because

he failed to preserve his challenges to the testimony for appellate review.  *See Myers I,*

93 N.Y.S.3d at 860.  The Appellate Division further noted, however, that Myers's

contentions with respect to the testimony were without merit.  *See id.*

       Habeas relief is thus not available to Myers for his confrontation claim.

For an independent and adequate state ground to bar habeas relief, the state court

rendering the judgment must "clearly and expressly" state that its judgment rests upon

a state procedural bar.  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (citation

omitted).  Here, the Appellate Division clearly and expressly stated that Myers's

confrontation clause claim was procedurally barred by CPL § 470.05(2).

       Moreover, Myers has failed to demonstrate that he is entitled to an

exception to the procedural default rule, because he has not shown either (1) cause and

actual prejudice or (2) that a fundamental miscarriage of justice would occur if the

merits of the federal claim were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446,

451 (2000) (citation omitted); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

       Myers's confrontation claim fails on the merits in any event.

Purported evidentiary errors in a state court trial are rarely a basis for habeas relief.

The Supreme Court has acknowledged its "traditional reluctance to impose

constitutional constraints on ordinary evidentiary rulings by state trial courts."  *Crane v.*

*Kentucky*, 476 U.S. 683, 689 (1986).  As trial judges are "called upon to make dozens,

sometimes hundreds, of decisions concerning the admissibility of evidence" in any

given criminal trial, "the Constitution leaves to the judges who must make these

16

decisions 'wide latitude'" in ruling on the admissibility of evidence. *Id*. at 689-90 (citation omitted). Consequently, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted). The erroneous admission of evidence constitutes a denial of due process "only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (citation omitted).

Here, the trial court's decision to admit Ennis's statements identifying Myers as the perpetrator and the Appellate Division's affirmance of that decision were eminently reasonable and are entitled to deference. Ennis's identification of Myers to Karen Arce, the witness rendering aid, and Officer Giattino, who accompanied Ennis in the ambulance, were relevant and not testimonial. Ennis's statements were made to both individuals during an ongoing emergency. *See Davis v. Washington*, 547 U.S. 813, 828 (2006) (noting that statements made by a victim during an "ongoing emergency" are nontestimonial and thus do not violate a defendant's confrontation right). There was no error here, much less constitutional error that would warrant federal habeas relief. For these reasons, Myers is not entitled to habeas relief on his Sixth Amendment confrontation claim.

**B.    *The Suggestive Photograph and Probable Cause Claim***

Nor is Myers entitled to habeas relief for his claim that there was no probable cause for his arrest and that Ennis's identification of him was unduly suggestive.  As to the claim concerning his arrest and subsequent statements, Myers has had a full and fair opportunity to litigate those claims in state court, and thus federal habeas relief is unavailable.  *See Stone*, 428 U.S. at 482.  Myers had a suppression hearing and never challenged the fairness or findings of that suppression hearing.  As there is no doubt that Myers had a full and fair opportunity to litigate his suppression claim in state court, Myers may not relitigate the issue on habeas review.  Accordingly, Myers's claim that the photograph shown to Ennis was unduly suggestive must be dismissed.

**C.    *Sufficiency of the Evidence***

Myers also argues that the evidence supporting his conviction was legally insufficient.  Like his confrontation clause claim, Myers's claim with respect to the sufficiency of the evidence is also barred by an independent and adequate state ground.  The Appellate Division considered Myers's claim on direct appeal and concluded that CPL § 470.05(2) procedurally barred his sufficiency of the evidence claim because he failed to preserve his challenges to the testimony for appellate review.  *See Myers I*, 93

N.Y.S.3d at 860. The Appellate Division further noted, however, that Myers's

contentions with respect to the testimony were without merit. *See id.*

Habeas relief is thus not available to Myers for his sufficiency of the

evidence claim for the same reasons as his confrontation claim, discussed above. For an

independent and adequate state ground to bar habeas relief, the state court rendering

the judgment must "clearly and expressly" state that its judgment rests upon a state

procedural bar. *Whitley*, 642 F.3d at 286 (citation omitted). Here, the Appellate Division

clearly and expressly stated that Myers's sufficiency of the evidence claim was

procedurally barred by CPL § 470.05(2). Myers has also not shown cause or prejudice.

Myers's claim fails on the merits in any event because the evidence at trial

was sufficient to prove his guilt beyond a reasonable doubt. Defendants in a criminal

trial may be convicted only upon proof establishing their guilt beyond a reasonable

doubt. *See Jackson v. Virginia*, 443 U.S. 307, 323 (1979). When reviewing a claim that the

evidence introduced at trial was insufficient to sustain a defendant's conviction, the

reviewing court applies the standard set forth in *Jackson* to determine "whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt."

*Id.* at 319. In doing so, the court defers to the jury's assessments on both "the weight of

the evidence [and] the credibility of witnesses." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d

Cir. 1996). Furthermore, the court "must look to state law to determine the elements of

the crime." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002).  A "petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Id*. (internal quotation marks and citation omitted).  Indeed, a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge only if the state court decision was "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (internal quotation marks and citation omitted).

The Appellate Division held that, "viewing the evidence in the light most favorable to the prosecution . . . it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Myers I*, 93 N.Y.S.3d at 860.  The Appellate Division further determined that upon reviewing the record, "the verdict of guilt was not against the weight of the evidence." *Id.*  The Appellate Division's determination is entitled to substantial deference, and given the evidence presented at trial, the court's determination was not unreasonable.

There was more than enough evidence -- including the testimony of eyewitnesses, surveillance footage, and medical findings -- for the jury to conclude beyond a reasonable doubt that Myers stabbed Ennis, killing him.  Williams, who had previously ridden in Myers's van, witnessed the encounter.  Karen Arce rendered aid to Ennis and was told by Ennis that "Jerry," or Jevon Myers, had stabbed him.  Ennis gave a description of Myers that led to officers finding Myers in his van driving away from

the scene.  Ennis also identified Myers's photograph in the back of the ambulance.

Myers admitted to the police officers that he had gotten into an altercation with Ennis.

This compelling evidence was sufficient to support the jury's determination that Myers

was guilty of the charged crimes, and, thus, this claim provides no basis for federal

habeas relief.

        **D.**     *Unduly Harsh and Excessive Sentence*

        Finally, Myers's claim that his sentence is excessive must also be

dismissed.  The Appellate Division considered the claim on the merits and rejected it,

concluding that "[t]he sentence imposed was not excessive."  *Myers I*, 93 N.Y.S.3d at 860.

"No federal constitutional issue is presented where . . . the sentence is within the range

prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also*

*Fielding v. LeFevre*, 548 F.2d 1102, 1108 (2d Cir. 1977) ("Essentially, [defendant] asks this

Court to review a sentence handed down by a state court, which we are powerless to

do.").

        Myers was convicted of one count of first-degree manslaughter in

violation of New York Penal Law § 125.20(1), *see* Dkt. 1 at 1, a Class B felony, *see* N.Y.

Penal Law § 125.20(4) ("Manslaughter in the first degree is a class B felony.").  A

defendant convicted of a class B felony under New York law must be sentenced to at

least five years and no more than twenty-five years.  *See* N.Y. Penal Law § 70.02(3)(a).

For a defendant who is a second felony offender, the sentence must be at least nine

years and must not exceed twenty-five years.  *See* N.Y. Penal Law § 70.06(3)(b).  Hence,

Myers's sentence of twenty-three years on the manslaughter count was within the range

permitted by New York law, and thus no federal constitutional issue is presented.

### E.    The Supplemental Petition

Myers's Supplemental Petition must be dismissed because it is time-

barred.  In its February 23, 2022 opposition to the Supplemental Petition, Respondent

argues that the Supplemental Petition is untimely because it was not filed within the

applicable statute of limitations.  Dkt. 20 at 9.  I agree, although the claims fail for other

reasons as well.

Section 2244(d)(1) imposes a one-year statute of limitations on state

prisoners seeking habeas corpus review in federal court.  The period begins to run from

the latest of (1) the date on which the petitioner's judgment of conviction becomes final

by the conclusion of direct review or the time for seeking such review, (2) the date on

which an impediment to filing the petition is removed, (3) the date on which the

constitutional right asserted was initially recognized, or (4) the date on which a factual

predicate to support a claim could have been discovered through due diligence.  28

U.S.C. § 2244(d)(1)(A-D).  "This statute of limitations quite plainly serves the well-

recognized interest in the finality of state court judgments."  *Clemente v. Lee*, 72 F.4th

566, 471 (2d Cir. 2023) (internal quotation marks and citations omitted).

Here, the statute of limitations began to run on the date Myers's conviction became final -- thus, the relevant date is the date Myers's conviction became final by the expiration of direct review in state court. Myers's conviction became final on August 28, 2019: the Court of Appeals denied leave to appeal on May 30, 2019, *see Myers II*, 126 N.E.3d 170 (2019), and the time for seeking review in the United States Supreme Court expired ninety days later, on August 28, 2019. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001); Supreme Court Rule 13(1).

Moreover, the claims raised in the Supplemental Petition do not relate back to the claims in the original Petition. Under Federal Rule of Civil Procedure 15(c)(2), amendments made after the statute of limitations has run "relate back" to the date of the original pleading if the original and amended pleadings "arise out of the [same] conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(2). "An amended habeas petition . . . does not relate back (and thereby escape [§ 2244(d)(1)]'s one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

Here, the claims in the Supplemental Petition do not relate back to the claims in the original Petition -- and thus, the Supplemental Petition is untimely. In the Supplemental Petition, Myers argues that trial counsel was ineffective for (1) conceding during a pre-trial hearing that there was probable cause for Myers's arrest; (2) failing to

23

call witnesses, including an alibi witness; and (3) failing to move to dismiss the indictment. He also claimed that the prosecution suborned perjury. *See generally* Dkt. 12. The claims in the Supplemental Petition all "differ in both time and type" from those in the original Petition. For instance, though both petitions contain claims relating to the pre-trial suppression hearing, one claim relates to the allegedly unduly suggestive identification procedure, while another relates to trial counsel's alleged concession that there was probable cause. But "the question is whether the claims asserted in the [Supplemental Petition] relate to the facts underlying the claims set forth in the initial petition," *Marsden v. Colvin*, No. 17-CV-936 (LDH), 2022 WL 4644672 at *3 (E.D.N.Y. Sept. 30, 2022), and here the claims do not relate back to the facts underlying the original Petition.

Thus, the new claims raised in the Supplemental Petition are untimely. In his response to Respondent's Opposition to the Supplemental Petition, Myers essentially argues that his Supplemental Petition is nonetheless timely because this Court (Chen, *J.*) previously ordered him to submit a supplemental petition containing his three unexhausted claims. *See* Dkt. 22 at 4-5, 13. Even assuming that Judge Chen's November 23, 2020 order somehow had the effect of extending or tolling the statute of limitations for Myers's supplemental claims, the claims fail on the merits in any event.

If a habeas petitioner's unexhausted claim is "plainly meritless, the court may deny the claim on the merits notwithstanding the petitioner's failure to exhaust."

24

*Oritz v. Heath*, No. 10-cv-1492 (KAM), 2011 WL 1331509 at *14 (E.D.N.Y. April 6, 2011)

(citing 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).  The claims in the

Supplemental Petition, though unexhausted, may be denied because they are plainly

without merit.

First, Myers's ineffective assistance of counsel claims are belied by the

state court record.  For instance, his trial counsel did file a motion to dismiss the

indictment, Dkt. 20 at 14.  Any "concession" by counsel during pre-trial evidentiary

hearings regarding the existence of probable cause was harmless, as the record of that

hearing demonstrates that there was probable cause for Myers's arrest.  *See generally*

Dkt. 8-2 at 162-181.  Second, Myers's claim about false evidence -- that the prosecution

suborned perjury during trial -- is completely uncorroborated and unsupported.  Myers

is unable to meet his burden of demonstrating that false evidence was in fact used to

gain his conviction, *see United States v. Helmsley*, 985 F.2d 1202, 1205-06 (2d Cir. 1993),

and instead offers blanket assertions that certain testimony, for example Officer

Doughty's testimony, was false.  Finally, Myers is also unable to meet the "deliberately

demanding" burden of establishing his entitlement to habeas relief based on a claim of

actual innocence.  *Marsden*, 2022 WL 4644672 at *5 (internal quotation marks and

citations omitted).  As with his false evidence claim, Myers has not provided any

evidence that would cause a court to no longer "have confidence in the outcome of the

trial."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  Indeed, the evidence of his guilt --

discussed above, including the testimony of eyewitnesses to the encounter and evidence that Ennis told two witnesses that Myers, his co-worker, stabbed him -- is overwhelming.  Accordingly, the Supplemental Petition must be dismissed in all respects.

### *CONCLUSION*

Myers has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition and Supplemental Petition are denied.  Additionally, I decline to issue a certificate of appealability because Myers has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgement to Myers at his last address of record.

SO ORDERED.

Dated:     New York, New York
           December 29, 2023

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation